## Commonwealth v. Favinger

*Rudolph J. van der Hiel, District Attorney,* for Commonwealth.
*Larry Linder,* of *Linton & Linder,* for defendant.

KEMP, *P. J.,* July 22, 1976—

### I.  HISTORY OF THE CASE

Defendant was charged with a violation of section 704 of The Game Law of June 3, 1937, P.L. 1225, as amended, 34 P.S. §1311.704, using an unlawful method to hunt game, specifically the use of bait, namely a corn feeder, to attract deer. The case was heard on February 13, 1976, before District Magistrate William A. Buckingham, of Elkland, who convicted defendant and imposed a fine of $200 pursuant to section 731 of The Game Law of 1937, as amended, 34 P.S. §1311.731. An appeal was taken by defendant from his summary conviction, and we heard testimony de novo on May 18, 1976. From that testimony, we find the following.

## II. FACTS

On November 29, 1975, James Meachem, a deputy game protector, and James Farr, a Game Commission part-time trainer, saw about 16 ears of corn in a corn feeder with deer droppings and tracks surrounding the corn feeder on private land owned by defendant. The brush was cleared around the corn feeder and a tree stand was constructed about 50 feet away from the feeder.

On December 1, 1975, the first day of buck season and just two days later, Game Protector John K. Weaver took a stand near the corn feeder at about 6:30 a.m. He observed a flashlight coming up through the woods and the light went out at the base of the tree where the tree stand was located. He heard sounds of someone climbing the tree. When it became daylight, he could see an individual sitting in the tree stand facing the corn feeder. He observed the individual until 7:45 a.m. when he approached the tree and asked the person to step down. The person was Wilbur S. Favinger, defendant. Defendant had a loaded model 70 rifle with a shell in the chamber and four in the magazine. Game Protector Weaver testified that defendant stated that if a deer had come into view, he would have shot it.

Game Protector Weaver admitted that there was no corn in the corn feeder at this time, but that there was a fair amount of cobs and there were considerable signs of deer around the feeder. There were also game trails leading to the feeder. The stand was located in a tree a few feet away, facing the corn feeder, and the brush was cleared away, six or seven feet wide, between the corn feeder and the stand. Game Protector Weaver sat in the stand himself and observed the corn feeder from the stand and it, the feeder, was clearly visible. He

admitted, however, that there were no eatables in the feeder at that time, December 1, 1975.

Defendant, Wilbur S. Favinger, admitted to having built the tree stand and the corn feeder. He testified that he had put corn in the feeder in September and October, but that he had gone to the stand on December 1, 1975, with the belief that there was no food in the feeder.

## ISSUE

Because the material facts in this case are entirely undisputed, the issue is one of law: whether the act of defendant, in hunting deer in the area of a corn feeder that he had built and placed corn in, falls under the prohibition of section 704 of The Game Law of 1937, which sets forth a general prohibition against the use of bait to attract animals, even though there was no corn in the feeder at the time defendant was arrested.

## DISCUSSION

The statute that defendant is alleged to have violated reads, in pertinent part, as follows:

"§1311.704 Unlawful methods of hunting
"Unlawful methods and Devices
". . .
"Except as otherwise provided, it is unlawful to hunt for, catch, take, kill, or wound, or attempt to catch, take, kill, or wound any wild bird or wild animal of any kind . . . (d) or to set, lay or prepare for use or to use any bait, hay, grain or other food, . . . (f) or to make use of any method or device not specifically permitted by this act, for the purpose of catching, taking, or wounding, or killing wild birds or wild animals.": The Game Law of 1937, as amended, 34 P.S. §1311.704(a).

This enactment obviously prohibits the use of bait of any kind other than that specifically allowed in other sections of The Game Law or by the regulations promulgated pursuant thereto by the Pennsylvania Game Commission.

Defense counsel argues that there was no offense committed, and, therefore, the charges should be dismissed, because there was no corn in the corn feeder on the date defendant was charged and because the citation says the corn feeder was used as bait, and, defense counsel further argues, a corn feeder is not bait within the meaning of the above statute.

In Koop v. United States, 296 F. 2d 53 (8th Cir., 1961), defendants made a claim similar to the one being made by the defense counsel in the case before us now, namely, that because there was no bait on the premises at the time of the arrest, there could have been no baiting offense committed.

In Koop, supra, Dr. Koop had raised and fed ducks on his ponds since 1945:

"His stated purpose was two-fold: One, to keep the ducks alive, and, two, to keep them confined to the area . . .

"Dr. Koop's practice over the years was to discontinue feeding the ducks for what he deemed to be a sufficient length of time before the opening day of the hunting season so that there would be no corn left in the ponds. In 1959 he fed the last corn on October 3rd, four days prior to the opening of the hunting season." Koop, supra, at 55.

Defendants in Koop pointed to the fact that:

"Dr. Koop quit feeding four days before the opening of the hunting season and they would interpret the regulation to the effect that what had been done with bait before the shooting took place was of no

consequence but, rather, that in order to constitute 'baited area' bait must be there at the time of the commission of the act charged. They say that the appellants cannot be found guilty 'unless there was some evidence of corn in the pond in a quantity and in a place which was a violation of the regulation', that is, 'capable of attracting such birds.' "

". . . whether they did so by the indirect method of so baiting before the season as to create an attraction for the birds after the season opened or by the direct method of placing the grain in the water in front of the blinds during the hunting season . . ."

The court also cites the case of Cerritos Gun Club et al. v. Hall, 96 F. 2d 620 (9th Cir., 1938). In that case, the court also held that appellants were in violation:

". . . whether by pursuing the indirect method of baiting before the season opens to keep the birds there to be shot after the season opens, so that hunters may flush them as they walk or hunt over the preserves or by directly placing the grain in front of the blinds or stands during the season."

It is obvious to the court that, from the facts of this case and from the cases cited above, a corn feeder that had 16 ears of corn in it two days before the opening of deer season, would continue to be a lure to deer on the first day of that hunting season, even if there was no corn in it, and, therefore, would be bait within the meaning of aforesaid statute.

## CONCLUSION

We hold that the corn feeder in this case, and within the facts of this case, constitutes bait within

the meaning of section 704 of The Game Law of 1937, and we hold that the act of defendant in taking advantage of the said corn feeder constitutes a violation of that statute.

## ORDER

And now, July 22, 1976, pursuant to the opinion of this court, defendant is found guilty of the offense pursuant to section 731 of The Game Law of 1937, as amended. The court hereby imposes a fine of $200, together with the costs.